Good morning, Your Honor, and may it please the court. Michael Celio of Gibson, Dunn & Crusher, on behalf of Slack, its officers and directors, and its investors. With the court's permission, I'd like to reserve four minutes for the model. This case presents the question of who may sue under the federal securities laws in the absence of any allegation of fraud? And more importantly, whether the answer to that question that has been accepted for 53 years by every court to consider it, must now change because Slack went public by means of a financial transaction called a direct listing. The answer to that question is no, the law need not, the law should not, and indeed, the law cannot change, simply because of the factual specifics about how a company becomes public. We all agree the law at issue here, the Securities Act of 1933, and and it provides a plaintiff with a cause of action under what is essentially a strict liability standard. But that right has always been understood to be limited to those purchasers who can plead and prove that they purchased shares registered by the document that the plaintiff claims contained an error. The term tracing is the imperfect label that we give to this concept. And everyone agrees that the plaintiff in this case, the appellee here, cannot trace his shares. He has been very forthright about that. I'll ask a question. I think there's only one registration in this case, it's for the the direct listing. Is that the case? Not quite, Your Honor, there is one primary, but there is also if you look on excerpts of record page 237, actually a second registration statement for some of the employee shares. So there actually are two, we have focused the case and the litigation primarily on the S1 by which the direct listing was affected. Okay, so there are two registration statements out there. So basically, you're saying nobody, because there's  nobody can ever trace anything. So it's so there's three categories of shares. They're the ones registered by the S1, the ones registered by the other statement registration statement, and then there are the exempt shares. I don't think it's the case that no one ever could. I think conceptually, someone might in certain circumstances, but those circumstances are not present here. All right. The unregistered shares became publicly traded because of the registration statement, right? They are able to be traded on the New York Stock Exchange as a result. Yes, right. They could sell them privately or on one of these special unregistered share trading platforms, but they because they have the direct listing registration statement, even though some shares were not registered in the first public listing, right? I would not agree with the words because of, but I was section 12 problem, I suppose. But I would concede, Your Honor, that the shares are tradable on the direct listing. That is correct. Okay. Thank you. So tracing is required. Plaintiff appellee concedes that he cannot trace, and that, in our view, should have ended the case. But as is obvious from the fact that I'm speaking first today, it did not end the case. So let me begin there, because in some ways we view this as an exceptionally easy case. No case in this circuit or any other has ever held what the district court below held. The tracing can simply be dispensed with. There are certainly cases where tracing has been satisfied, but there's never been a case where a court has held in the entire existence of the federal securities laws that you can simply excise it. So while I fully appreciate that we're the appellants today, I would submit that my argument is in some ways much more like that of a typical appellee. I simply asked the court to follow its own precedent in Century Aluminum and the unbroken string of cases that say essentially the same thing. I think it is the appellees who must convince you to craft an entirely new rule. And because my basic argument is so straightforward, tracing is required. It is conceded. It cannot be done. Therefore, under Century Aluminum, the case must be dismissed. I'm going to focus the remainder of my argument on this new rule. And I think to focus the court. Another question. Okay. We have this company became publicly traded on the New York Stock Exchange through a direct listing. And there's shares that are registered and unregistered. And they all became publicly traded on the same day because of the direct listing. So none of these old cases talk about that situation. And they all talk in as far as I know, in terms of it must be a share registered under that registration statement when they were talking about multiple registration statements that put multiple batches of shares out in the market. So isn't this case different in that such security may have been the same thing, those words, but when applied to this back situation, it is such security. All right. You get the gist of my set. I get the gist, Your Honor. And a similar argument was advanced by FLEs here. But first, it's not the case that, as I said, that there's only one registration statement. But even holding that aside, that's another way of saying this is the first direct listing case. This is the first case that has presented this exact scenario. But it is not the first time that there have been unregistered shares in the market. And when, for example, an IPO came available. So we cited to you the Johnson versus CBD case out of Texas. That's a case where there wasn't a lockup. And the lockup that the banks impose is what makes tracing possible in IPO cases. That was a case where there were unregistered shares in the market. There was no lockup. And as a result, the court found that tracing there wasn't possible following, even though it's a Texas federal district court, following this court's holding in Century Aluminum. There's quite a bit of discussion. Yeah. I think the Ninth Circuit hasn't really done that. They've done the two separate or successive registrations, but not the purely registered unregistered. Am I right about that? I don't think that the Ninth Circuit has addressed this precise question, Your Honor. I think that's right. This is Slack was. I don't mean the direct listing. I mean, saying that registered unregistered presents the tracing problem. So that exact scenario has not come before this court. I think that is correct. But I think that it has come up a number of times in various other courts. In fact, in those other courts, it's always been assumed. And I think if you look at Judge Shyland's famous opinion in the in Ray initial public offering securities litigation case that was out of the Southern District of New York, she noted there the impossibility of tracing shares once they've mingled with unregistered shares. You know, there's a judge, our district judge here in a case in 1996 called Lily versus Sharon granted a motion to dismiss where there were 80,000 unregistered shares of common stock. It has always been understood that there needs to be a tight nexus between the alleged misstatement and the shareholder. And that makes sense because this isn't a statute that is a general statute of remediation. We have those. We have Section 17 under the Securities Act. We have Rule 10B5 and Section 10B under the Securities Exchange Act of 1934. So no plaintiff here is ever going to be left without a remedy. The issue that the court addresses in Century Aluminum and this broader issue is who has access to this lower standard of proof, this standard of essentially strict liability and the price that you pay for that is having to show this tight connection. And I think if you look at the language of the statute, which is sort of the place that I wanted to go next, I think that it is, you know, it is not the case that you can carve out the kind of rule that plaintiffs want to carve out. I think the rule that plaintiffs and appellees here are advocating is where a company offers its shares for the first time through a direct offering and non-registered shares also become publicly traded in the same offering, any person who acquires such shares may sue. So they're not advancing the argument Your Honor is referring to. They're simply saying that the tracing requirement ought to be dispensed with in those circumstances. And I think that the text of the statute makes clear that that's simply not what needs to happen. The very first words that we focus on in case any part of the registration statement contained an untrue statement of material fact, any person acquiring such security may sue. It has to be a security that is tied to that registration statement. And that is clear from the very previous section at the end of section 10, which says the commission may by rules and regulations require the filing with the forms and prospectuses used in connection with the offer or sale of securities registered under this subject. Why is that an appropriate way to read it? I mean, I would have thought looking at this sort of the same thing that Judge Friendly did that such security is ambiguous because there's no other security referred to in that section. Why is it appropriate to look back to another section to find the reference for such? Well, the Supreme Court did that and actually went four sections back in the case that we cite in our briefs relating to health care. So first you have an example that the Supreme Court says that is something as a canon that you can do. But you don't have to go back that far. I think that if you read section 10, I mean, section 11, just by removing the various parentheticals you get in case any part of the registration statement contained an untrue statement of material fact, any person acquiring such security may sue such security is clearly a reference back to the registration statement. Registration statements exist solely to register securities. So while it might have been cleaner to say, in case any part of the registration statement registering securities contained an untrue statement of fact, it would have been sort of bad English. Perhaps they concluded that it wasn't necessary. Regardless of why they made that choice. I actually think it's relatively clear just from the text itself that that's the way it needs to be read. Like the remainder of my time. Good morning, your honors. Lawrence Eagle, Breaker Eagle and Squire on behalf of plaintiff Peli Fiaz Pirani. I couldn't disagree more with counsel's assessment of the text of section 11, as well as his interpretation concerning why section 11 doesn't say registered or it says such securities and not registered securities. I think the reason it doesn't say such securities and why it says such securities rather than registered securities was purposeful. And I think Judge Friendly probably analyzed the circumstances as to why both the interpretation, a narrow interpretation in certain circumstances where there are already existing shares and then a new registered shares come onto the market where such security in those circumstances should be read narrowly. And I think Judge Ilston correctly interpreted such security in accordance with Judge Friendly's second analysis to say a broader reading is appropriate such that such securities should include any security of the nature that is the subject of the registration statement. And I think Judge Rustani focused on that in her questioning initially. And insofar as you're dealing with the fact that this is an initial public, it's an initial offering. It is the first time shares are offered to the public, and you cannot offer shares to the public without filing the registration under the. I really have trouble with saying the words mean different things in different contexts, but the words can be the same thing and be applied differently, you know, applied to facts and come out with a different answer. Mike, he has, your opposing counsel has said that there are more than one registration statements here. It was my thinking that perhaps your argument works if there's only one registration statement that allows shares registered or under registered to go public and be publicly traded on the New York Stock Exchange. But he says there's more than one registration statement. Well, I will tell you, I'm a little surprised by that argument this morning because I don't think that was the central argument that was made by the appellee. He was saying it in response to what I said, which was not your central argument either. So I want to know what's cooking. It is our central argument to say that where there is one offering, and in this case, there was one offering, and that offering was the S1 that was ultimately declared effective on June 20th. And on June 20th, shares that were registered shares under that S1 became available to sale. At the same time, 165 million shares of shares that were listed as exempt shares also became available for sale. And those, the investing public, the investing public is looking at one registration statement. They're not, and again, why with such security, this is a reliance argument to some reliance is presumed, but there are no other registration in the tracing requirement has been adopted to ensure that when purchases of securities are arguing that they relied on or arguing that they bought securities out of because of a misrepresentation in a registration. If there are two registration statements, then they have to say which registration statement they bought their securities from, because not all of the registration statements contain the misrepresentation or the omission. Here, there's no question that there was only one registration statement that contained the omission that Judge Osten found was present in this case. And every investor, including the plaintiff and other members, relied on one registration statement. So the tracing requirement that's existed in the past or that's been the judicially adopted principle has largely been a reason to the statute. Again, I go back to the statute. I apologize, but go back to the statute language. It starts with the registration statement. So the predicate is the registration statement that has a misrepresentation or omission in it. And then such security does not say a share that's registered under the registration statement. And courts have been careful in their language they've used. They have not said that it must be a share registered in that particular offering. They say that you must trace your shares to that offering, but they have to be the shares because in the situation in which you're looking, you're saying that a particular offering has a misrepresentation, you need to trace those shares. There are certain lower courts have used loose language about the shares being registered, but such security could easily have said registered security. And I think Judge Friendly's interpretation is that it's the same class of securities because this is a way of interpreting the statute consistently with allowing for, in the case of a direct listing, allowing for Section 11 liability appropriately. That sort of brings up the textual question I have with your reading because I agree with much of what you just said there, that the statute as an initial matter is ambiguous, but Barnes and then all of our cases following it didn't say, and I don't think legitimately could have said, the statute is ambiguous and therefore we're just going to make up a tracing requirement. The only way that the tracing requirement makes sense is if we read such security as referring back to a security issued under the registration statement. And maybe that reading made more sense in that context than it does in this context, but having adopted that reading, I don't understand how we can make the words mean something different here. Well, I don't think the Century Aluminum or the case of Hertzberg did say that it had to be securities issued under the registration statement. I think that that is an important distinguishing characteristic as to the precedent, as to the prior cases. Again, we're under factually different circumstances, but those cases simply say you must trace your shares to that offering. It doesn't say that they have to be this particular shares that were registered in that offering. And that's an important... Where does the tracing requirement come from? I mean, I don't understand how we could have imposed a tracing requirement unless it was as a reading of what such security means. Well, the tracing requirement comes from the language of the statute that says that focuses on the registration statement as the statement that contains an untrue as the focus of sort of the referring as the focus of why you as a purchaser need to have purchased your shares pursuant to effectively an early one or another registration statement. You cannot purchase. You cannot just put it where there is more than one offering. You cannot purchase your shares pursuant to the second offering, which doesn't contain the registration statement. In that case does not contain a material misstatement or omission. And therefore, if you're tracing, you need to trace. You have to be able to show that you rely, that you can trace your shares to an earlier registration statement. But the point is the language of the cases. And we advocate for that. You have to put to the extent any tracing is required. It's not that it has to be registered. It has to be pursuant to the registration statement. Where in this case, our position is that all of the plaintiffs bought pursuant to this one registration statement. And I believe the language in the cases, including in the case of Hertzberg, I think Hertzberg is a dignity partisan. The court said, while it might be a problem of proof in a case in which stock was issued under more than one registration statement, the only dignity stock ever sold to the public was pursuant to the allegedly misleading registration statement issue in this case. Thus, as long as Hertzberg is suing regarding this security, and again, it doesn't say a registered security. The court could easily have said registered security. It didn't. It said this security, which means this type of security, as we've argued here. He is any person purchasing such security, regardless of whether he bought in the initial offering a week later or a month after that. So I think dignity partners, which was followed in Century Aluminum, and again, I think even the language of Century Aluminum, similarly, first, it refers to dignity partners in the court's decision in that case. But it similarly uses much broader language to say, it does not say shares registered. I have, most circuits, and I think every case, even the Second Circuit, and I think it's DeMars has said that, and that's DeMaria V. As long as you bought the shares pursuant to the, and that's the key difference. It doesn't have to be registered shares, and I've not seen that. And certainly, Congress could have said registered shares. It said such security, and there is a reason why it said such security. It's because it is a broader concept. The words such security, as Judge Friendly said, could be interpreted as a broader sense. And I believe that was Congress intent based on the remedial nature of Section 11 and based upon the case interpreting. So I do think direct listings are, and also in interpreting the word such security, interpreting the way we've advocated and the way Judge Ilston interpreted, allows this court to interpret the statute in a consistent manner. Because otherwise, if the court adopts the position advocated by the appellants here, you are eliminating Section 11 liability in the connection with direct offerings, direct listings. And direct listings are, and there's no reason to believe that directs that a ruling contrary or a ruling that affirms Judge Ilston's decision is going to have any significant adverse effect on direct listings or the stock market or anything else. Whether it was an IPO or a direct listing, the fact that this court says the companies must, honestly and fully, in the first time they go public. Again, the importance of a direct listing is that this is an initial, it's analogous. And if you look at the SEC and New York Stock Exchange, they start by explaining that a direct listing is analogous to an IPO. Can I ask a question? If you're right, why is there all this talk about everybody, there's no problem when you have a lockup because that locks up the unregistered shares for a certain period of time. So if that, if that's, if what you're saying is true, then the lockup doesn't matter either. When you say, I'm not following you. Because those unregistered shares get on the market just later. And they're only getting on pursuant to one registration statement. Because you get the, you, okay, you have a, okay, you get my question? I do. If what you're saying is true, why do we care about the lockup? Well, we care about the lockup because that eliminates the ambiguity that we have in this situation, which is that in the case of a lockup, whether it's 90 days or 180 days, you would then still have the obligation to say you bought your, trace your securities or your securities are still bought pursuant to the first registration statement. But the, the entry of, of, of shares previously locked up, then creates a class certification and or a tracing problem. It may be that you could only represent a more limited class in a situation in which that occurs and or you'd have to adopt a, you could still trace. These cases that, that recognize in the IPO area where there was a lockup, it makes it easy for the first 90 days or first 180 days. And then it may get more difficult for purchases after that period of time to be part of the class by virtue of the tracing problem. But you certainly would have the people within the first 90 days. And I think direct listings have, have adopted that. In this case, Slack, they've declared their registration, essentially withdrew their registration statement 90 days later. And they did that because they wanted to avoid the section 11 liability that, that existed at the initial stage. So I think, I think the, the, the, that the message that the appropriate message is that if you want to sell your shares in an initial public offering through the direct listing, it's not an initial public offering, but you're going public, you're listing on the national exchanges. You have to disclose fully and honestly the facts that are required by section 11, and you're subject to potential liability under those circumstances. If you don't, I think that that's consistent with both the remedial nature of the, of the securities act, and it will not result in any adverse consequences. Section 11 has been around for many years. IPOs have existed for many years. This is a, this interpretation is an attempt to avoid section 11 liability for no, and there's no interpretory, I've explained. I think judge Friendly offered a very, uh, uh, an appropriate interpretation and judge Elston's decision was, I think, spot on as to why that interpretation makes perfect sense. And I believe it's the right message to be sent by this court that direct listings are through the first 90 days or some shorter period. That's a, that's a problem for tomorrow. That's not a problem for standing. That may be a class certification problem. It may be another proof problem, but we're just at standing. And our position is that our, uh, that, that Mr. Parani has standing, uh, to pursue these claims, uh, under section 11. Thank you, counsel. Very briefly, your honors. Thank you. Just three brief points. There was not one offering. And in, in two different senses, there was not one offering first excerpt of record to 36, we'll show you the essay. So you can find that in the record that there was actually another document, but more importantly, Slack didn't sell for its own account. Slack did not sell anything. So in an important sense, there was no offering here at all. Or if there was an offering, it was hundreds or potentially thousands of different individuals choosing to sell their shares. It was at least theoretically possible. And this is in the record. Slack said this many times, no one could have decided to sell. And that would have been fine. It Slack wasn't doing this as it quite plainly said, because it needed to raise capital. You wouldn't do a direct listing, at least in this form, if you needed to raise capital. Second, I just want to read a couple of direct quotes from some of these cases that, uh, that my friend on the other side was, was, uh, citing, because I think they give a slightly different hint to what the actual law is. Herman and McLean versus Huddleston says a section 11 action must be bought by a purchaser of a registered security, not pursuant to a purchaser of a registered security. That's, that's just the language of the court uses. Century Aluminum says section 11 provides a cause of action to any person who buys a security issued under a materially false registration statement. Uh, the second circuit case, we read section 11 is plain language to say unambiguously that a cause of action exists for any person who purchased a security that was originally registered under the allegedly defective registration statement. The word registered is all over the case. Can I ask a question about section 12? It's not quite the same. It says by means of a prospectus. And if these shares could not be sold on the New York stock exchange without the prospectus being there, isn't that by means of the prospectus? So again, the shares need to be, they're sort of, there's two problems under Pinter v. Dahl. You're not liable to your seller's seller. So in this case, the plaintiff appellee needs to say not just that he can trace, but that he can trace it to a particular person. In this case, there's no allegation of that sort whatsoever. We don't have a lot of time, but, but just briefly on section 12, there's a question of sort of, do you have the right defendant and the right points, you know, and, and the right, uh, sort of the right seller and the right buyer, I guess is the easiest way to say it. Um, in this case, the plaintiff didn't allege either of those things. He didn't allege the direct connection that needs to be there. So even if one reads the tracing argument under section 12 differently, the problem of the direct contact is still there. And it's still, I understand there's a, a different problem with 12. It's in, to my mind, it's in one sense, quite narrower and in another sense, a bit broader. Yes, your honor. And my closing thought, if the court will indulge me is just that section 12 allows restitutionary damages. It's actually the highest level of damages you can have potentially ruinous. It's really a remarkable idea that an individual director who, you know, didn't even speak at the investor day. If you look at paragraph 72 of the complaint, only two defendants did, could be liable to for restitution for the entire direct listing, you know, hundreds of millions of dollars. It's, it's a really remarkable, uh, train of thought that I think this court should not count. Thank you counsel. And thank you both for your arguments this morning and your briefings have been very helpful to the court. It's an interesting and important case and we'll take it under consideration. And, uh, with one final thought we'll be in recess for the morning. I want to thank, uh, chief judge emeritus Rustani for joining us. Uh, she's helped us out over many years and thank you again, Jane, for, for, uh, sitting with us and helping us have an answer. You're quite welcome. And with that, we'll be in recess for the morning. Thank you. This court for this session stands adjourned.
judges: Thomas, Restani, Miller